MILLER *v.* STATE.

(In Banc.   May 14, 1945.)

[22 So. (2d) 164.   No. 35858.]

278

**L. G. North,** of Belzoni, for appellant.

Greek L. Rice, Attorney General, by Geo. H. Ethridge, Assistant Attorney General, for appellee.

Roberds, J., delivered the opinion of the court.

Appellant was convicted of burglary and grand larceny. On this appeal he makes the contention, among others, that the evidence purporting to connect him with this crime is so vague, indefinite, uncertain and unreliable that it does not justify his conviction, and his request for a peremptory instruction should have been granted; but, if mistaken in this, that the verdict is against the great weight of the believable, creditable evidence, and the case should be reversed and remanded for trial by another jury.

The place burglarized was a store in Inverness, Mississippi, and the property stolen consisted of two radios. One Mack King and Henry Lindsey had already been convicted of the crime, and Lindsey had served his term in the state penitentiary therefor. King was also sentenced to the state penitentiary, but it is not shown definitely whether he had already served his term when the trial was had. He did not testify, and it is not shown whether he was available, nor why he was not used as a witness.

The state relies for conviction on the testimony of Henry Lindsey, and on flight of appellant. The officers found the radios, with much other stolen property, at the home of Lindsey. His testimony purports to connect appellant Miller with the crime at three points—first, in the agreement to commit it; second, the commission itself; and, third, delivery of the radios to Lindsey's home.

On the first point he testified that he and King and Miller were together, and that King said they "would get a couple of radios"; that it was agreed the witness would have one, and he supposed King would have the other; that when he and King were talking Miller was "Standing off."

"Q. Could he hear Mack talking? A. No, sir, he couldn't exactly hear him.

"Q. Where was it Sam came up while you and Mack were talking? A. He never did get close to us at all.

"Q. How close did he get? A. Close as from here to that gentlemen there.

"Q. What was it he said if anything? A. He didn't say nothing. Me and Mack was talking.

"Q. Sam was standing there? A. Yes, sir.

"Q. And you and Mack were talking? A. Yes, sir."

He then said Mack told him to go ahead to the store, and Mack and Sam (appellant) would come later, and that when he left Mack and Sam were "standing there."

Describing the happenings at the store, he says he went on ahead, and Mack told him to stand and watch; that

they were then near the front of the building; that he watched in an alley beside the building; that he did not see any one go in the building, or come out; and did not, of course, see what was stolen; and that he never saw or heard anything of Sam on that occasion. It might be explained that the building was entered by prizing open a rear door.

On the third point he says that about a week after the burglary some one drove up to his home in an automobile at night, and called out, "I got a pig and I want you to keep that." He first said that it was the voice of Sam, but later said it sounded like Sam's voice; and when asked, "You couldn't swear it was?" said, "No, sir." Presumably Mack delivered the radios to him, although that is not clear. But he does say definitely he never saw Sam on that occasion, and the only identification of him was the testimony regarding the voice, above set out. Boiled down, his testimony is that he never saw Sam from the time of the first conversation with Mack, when Sam "was standing off," until the trial took place over three years later. In view of the fact that the witness is a confessed accomplice in the crime, and that the testimony of a confederate should be received and weighed with care and caution, coupled with the vague, uncertain and indefinite character of the evidence given by him, it must be admitted that the state's case, based upon that evidence, is extremely weak; and but for the evidence of flight, as hereinafter set out, a majority of the Court is of opinion that appellant would be entitled to be discharged.

It is shown that appellant, about a week after commission of the crime, fled the state, and when apprehended in another state, resisted extradition; that while the extradition proceedings were pending, he was inducted into the army, and later, when on furlough at his home near Inverness, he was arrested and put to trial. He testified that his reasons for fleeing were that when in Inverness a few days after the event, he heard that the crime had been committed, and that King and Lindsey had been ar-

rested and severely whipped because of it; and when he reached his home, some two miles in the country, that night, his wife told him the officers had been there looking for him, and he was afraid he, also, would be whipped; and that he did not flee because he had any part in the crime. This evidence was competent, and the reason for his flight was a question for the jury.

Giving full effect to all of the evidence, we think it is sufficient to withstand the request for a peremptory instruction, but, since the accused is presumed innocent of the crime, and his guilt must be shown by the evidence beyond every reasonable doubt, our sense of duty and responsibility impels us, in view of the unsatisfactory condition of this proof, to remand the case so that another jury can pass upon his guilt or innocence. In the recent case of Ewing v. State, 9 So. (2d) 879, 880, this Court said, ''The question before us is not whether the defendants are in fact guilty or are probably guilty, but whether the State has made out beyond a reasonable doubt a case sufficient to withstand the weight of testimony consistent with innocence. The doubt that reasonable men engaged in a search for truth could safely accept and act upon the evidence to a moral certainty of guilt must be resolved in favor of the defendants. We are of the opinion that justice requires that the case be remanded and a new trial awarded.'' That statement is applicable here.

Reversed and remanded.