543 So.2d 665 (1989)
Vernon Oscar WILLIAMS
v.
STATE of Mississippi.
No. 58468.
Supreme Court of Mississippi.
May 3, 1989.
Thomas M. Fortner, Pascagoula, for appellant.
Mike Moore, Atty. Gen., Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, PRATHER and BLASS, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Vernon Oscar Williams was indicted by a Jackson County Grand Jury in January, 1986, for the rape of his twelve-year-old stepdaughter. He was tried twice in the Circuit Court of Jackson County, which trials resulted in mistrials. Williams was tried a third time on the charge January 20, 1987, and the jury returned a unanimous verdict of guilty. Thereupon, Williams was sentenced to twenty-five (25) years in the custody of the Mississippi Department of Corrections. He appeals to this Court and assigns two errors in the trial below.

Facts
The evidence reflects that on the first weekend in March, 1985, appellant picked up the victim, her sister, and her nine-year-old brother, Bubba. At the time, the children were living at the residence of their grandmother. Their mother, who was then married to appellant, was working on an offshore oil rig.
The appellant represented to the grandmother that he wanted to take the children out to eat and to the skating rink, and promised to return them by 10:30 p.m., since they were supposed to attend church on Sunday, March 3. However, the appellant took the children directly to his apartment on Richard Street in Moss Point, where the victim ended up spending the entire weekend. Appellant took the sister to the grandmother's home Saturday night around 10 p.m. because she wanted to return there for the night.
The victim testified that on March 4, 1985, which was the Monday before the appellant was supposed to go to Louisiana to pick up her mother from work, she and Bubba were still with the appellant. On the evening of March 4, the victim was getting ready to go to sleep on the couch with Bubba when the appellant told her to come into his bedroom and get in bed with him.
The victim testified that the appellant woke her up early on the morning of March 5; that it was still dark and he placed a yellow handled knife to her throat and ordered *666 her to undress; and that the appellant then engaged in sexual intercourse with her. Thereafter, the appellant threatened to kill her and her mother if she told anyone about the incident.
Bubba testified at the trial that he was lying on the couch when the appellant took the victim by the arm and dragged her into the bedroom; that he waited approximately ten minutes, then walked to the appellant's bedroom and looked through the partially open door, and saw appellant and the victim naked on the bed; that the appellant was on top of the victim and they appeared to be fighting; that he heard the victim telling the appellant to get off of her, and that during this incident, it appeared that the appellant had a knife in his hand; and that he wasn't certain about it being a knife, but it was yellow in color.
Bubba stated that he watched the appellant and the victim for approximately ten minutes and then returned to the couch in the living room. He saw his sister, who was naked, come out of the bedroom and walk to the bathroom. She took a bath and then called him into the bathroom and informed him about what happened. The appellant came out of his bedroom and told Bubba to leave the bathroom. The appellant then offered Bubba $10.00 not to tell anyone about the incident. The child refused the offer.
Approximately nine (9) months later, the victim informed her grandmother as to what had taken place back in March. Her grandmother immediately took her to the district attorney and charges were filed against the appellant. Thereafter, she was examined by a Dr. Clifford A. Seyler, who is a pediatrician. Dr. Seyler testified at trial that the victim's hymen had been torn and that this could have happened any time longer than two weeks prior to his examination.

Law

I.

THE LOWER COURT ERRED IN OVERRULING APPELLANT'S OBJECTIONS TO QUESTIONS ASKED OF, AND ANSWERS GIVEN, BY THE VICTIM CONCERNING NON-SPECIFIC THREATS COMMUNICATED TO AND/OR CARRIED OUT AGAINST THE WITNESS BY THE APPELLANT AND BEING IN VIOLATION OF RULES 403 AND 404, MISSISSIPPI RULES OF EVIDENCE.
In an attempt to explain why the victim waited so long to report the sexual assault committed upon her by the appellant, the prosecutor inquired as to threats made by the appellant to the victim.
During the examination of the victim by the prosecutor, he asked her if the appellant had ever made any kind of threats like the one in this incident to her before. She replied, "Yes, sir." Appellant objected to the questions, which objections were overruled. The prosecutor then asked the following question: "O.K., when he threatened you before, had he ever made good on any of those threats?" The victim replied, "Yes, sir." The trial judge then excused the jury from the courtroom and the district attorney elicited testimony from the victim showing that some of the appellant's threats had been made good.
The lower court overruled the objection made by the defendant and said:
The Court is of the opinion that the State has a right to show at this point that she was afraid of him. Now I certainly would sustain the objection as to other crimes or going into some of the questions that had been asked here, but I will overrule your objection and allow the State to show whether she was afraid of the defendant or not, her fear for the defendant. That is what I understand the State is trying to prove, and I think that is pertinent and material as to explaining her actions or failure to act and report. And I think the State is entitled to show that she was afraid of him.
The jury was returned to the courtroom and the following question was asked of the victim by the prosecutor: "..., were you scared of Mr. Williams at this time?" to which the victim responded, "Yes, sir." At this point objection was interposed by appellant asking the prosecutor not to lead *667 the victim, to which the court advised the prosecutor not to lead.
Appellant contends that the questions and answers violates Rules 403 and 404 of the Mississippi Rules of Evidence. However, appellant fails to cite any authority to support his assertion that he was denied a fair trial or due process of law under the state or federal constitutions. In Foster v. State, 508 So.2d 1111 (Miss. 1987), this Court said that the definition of "relevant evidence" in Rule 401 is a broad one favoring admissibility. The Foster Court further said:
If the evidence has any probative value at all, the rule favors its admission.
Relevance is the threshold requirement of admissibility; that is, only relevant evidence is admissible. Mississippi Rules of Evidence 402. The inquiry does not, however, end there. Relevant evidence may still be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading to the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Mississippi Rules of Evidence 403... .
If one or more of the 403 considerations slightly outweigh probative value, the evidence still must be admitted. To tip the scale is not enough. The 403 factors must, in the language of the rule, "substantially outweigh" probative value before the evidence may be excluded.
The trial court is afforded broad discretion in weighing these interests. United States v. Chalan, 812 F.2d 1302 (10th Cir.1987); Brumley Estate v. Iowa Beef Processors, Inc., 704 F.2d 1351 (5th Cir. 1983), cert. den. 465 U.S. 1028, 104 S.Ct. 1288, 79 L.Ed.2d 690 (1984). When the trial court determines that a 403 factor substantially outweighs probative value, it is still within its discretion to determine whether to exclude the evidence, since 403 states not that the evidence must be excluded in such cases, but, rather, that it may be excluded.
Because of this discretion vested in the trial court, our task as an appellate court reviewing a 403 determination is not to engage anew in the 403 balancing process. Rather, we simply determine whether the trial court abused its discretion in weighing the factors and admitting or excluding the evidence.
508 So.2d at 1117-18.
We are of the opinion that the trial judge did not abuse his discretion in admitting the testimony of the victim establishing that she was afraid of the defendant and was reluctant to report the crime soon after it occurred for that reason.
The assigned Error I is rejected.

I.

THE VERDICT OF THE JURY WAS CONTRARY TO THE LAW AND TO THE OVERWHELMING WEIGHT OF THE EVIDENCE AND THE COURT ERRED IN DECLINING TO GRANT A NEW TRIAL.
The victim and her brother testified positively as to the facts of the crime (eye witnesses). The jury heard all the evidence, observed the expressions and demeanor of the witnesses, and were properly instructed by the court. In Clark v. State, 503 So.2d 277 (Miss. 1987), this Court said:
On numerous occasions we have set forth the standard to be applied in ruling on denial of a motion for a new trial. Recently, in Burt v. State, 493 So.2d 1325 (Miss. 1986), citing Pharr v. State, 465 So.2d 294, 301 (Miss. 1984), this Court held:
Under our established case law, the trial judge should set aside a jury's verdict only when, in the exercise of his sound discretion he is convinced that the verdict is contrary to the substantial weight of the evidence. May v. State, 460 So.2d 778, 781 (Miss. 1984).

Burt, at 1328.
503 So.2d at 280.
We are of the opinion that the evidence adduced in the case presented a question for the jury to determine as to whether or *668 not the appellant was guilty and that issue was resolved against the appellant. We are further of the opinion that the evidence supports the guilty verdict. Pharr v. State, 465 So.2d 294 (Miss. 1984); Warn v. State, 349 So.2d 1055 (Miss. 1977).
There being no reversible errors in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.