730 So.2d 81 (1998)
Robert GIVENS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-00650 COA.
Court of Appeals of Mississippi.
September 29, 1998.
Rehearing Denied October 15, 1998.
Certiorari Denied February 18, 1999.
*83 Raymond L. Wong, Cleveland, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorneys for Appellee.
Before THOMAS, P.J., and COLEMAN and HINKEBEIN, JJ.
COLEMAN, Judge, for the Court:
¶ 1. A grand jury in the Second Judicial District of Bolivar County indicted the appellant, Robert Givens, for the crime of touching a child for lustful purposes as defined by Section 97-5-23(1) of the Mississippi Code.[1] A jury in the circuit court of that same district and county returned a verdict of "Guilty as charged" against Givens, and the trial court sentenced him to serve a term of eight years in an institution under the supervision and control of the Mississippi Department of Corrections (MDOC). The trial court also directed MDOC to provide Givens with psychiatric and psychological evaluations and treatment as needed pursuant to such evaluations. The trial court denied Givens's motions for a directed verdict, a peremptory instruction, and acquittal JNOV or, in the alternative, a new trial.
¶ 2. In his appeal from the trial court's judgment and sentence, Givens presents for our review and resolution the following three issues, which we quote verbatim from his brief:
(1) The trial court committed error in granting the prosecution's amendment or change to the indictment as to the date of the offense from on or about August 16, 1993 to on or about August 10, 1991 through August 14, 1991 was a change of substance and not of form as contemplated by Rule 7.09, URCCC.
(2) The trial court committed error in allowing the prosecution to introduce other crimes, wrongs, or acts of the defendant in the prosecution's case-in-chief in violation of Rules 404(b) and 403, M.R.E.; and the prosecution's introduction of defendant's other crimes, wrongs, or acts of the defendant did not fit into the exception of "absence of mistake or accident" as contemplated by Rule 404(b), supra. Further, there was not a limiting instruction given by the trial court concerning the Rule 404(b) evidence which was reversible error.
3. The trial court committed error in denying appellant's motion for directed verdict because the prosecution failed to prove its case against the appellant, and the verdict was against the overwhelming weight of the evidence, and the verdict evidences bias and prejudice against the appellant, and was based solely upon suspicion and speculation.
We resolve these issues adversely to Givens and affirm the judgment and sentence of the trial court.

I. FACTS
¶ 3. We recite the facts which are consistent with the jury's verdict that Givens was guilty of fondling; however, the nature of the crime requires that we change the names of the victim and her mother. Around ten *84 o'clock on the night of January 10, 1996, Mary, Givens's stepdaughter, entered the bedroom of her mother. Mary was crying and upset. The first thing Mary said to her mother was, "Mama, please don't be mad at me." Then, Mary told her mother that Givens, her stepfather, had been coming up to her room at night, and that's why she had been sleeping in her brother's room. Mary then told her mother that the first time it happened was when their family was living with Mary's mother's parents. Mary also remembered that when Givens touched her the first time, her mother had gone on a trip. Mary's mother had left on August 10, 1991, and returned on August 14, 1991. Thus, more than four years passed from the date that Givens first touched Mary until January 8, 1996, when Mary reported the incident to her mother.
¶ 4. Her mother took Mary to the Cleveland Police Department, where William Quinton, an investigator with the department, arranged for Tracy Ann Mohdzain, a licensed social worker who was employed by the Department of Human Services as an investigator of child abuse and child neglect, to interview Mary. After Mohdzain's interview, Quinton then interviewed Mary in her mother's presence. Givens was arrested the next day, and pursuant to his being questioned by Quinton, Givens signed a statement which Quinton had typed.
¶ 5. The incident for which Givens was indicted occurred as follows: Mary, dressed in a tee-shirt and underpants, had fallen asleep in her stepfather and mother's bed. When Givens came home later that night after work, he went to bed in the same bed. Mary was awakened by Givens's sticking his hand down in her underpants and "feeling on [her] bottom." Mary then got out of the bed and went into the bedroom in which her brother and she usually slept. Mary's brother was asleep when she entered their bedroom, but she did not awaken him. Mary's birthday was October 23, 1984; thus, she was six years old in August 1991 when this incident occurred. Givens was thirty seven years old in August 1991.

II. LITIGATION

A. Pre-trial
¶ 6. In its indictment of Givens, the grand jury charged that the crime occurred "on or about the 16th day of August, 1993." During the course of discovery, Givens filed a motion for definite time and place of offense, to which the State responded that "the time of the incident alleged in the indictment was... August 10-15, 1991" because "Mary said this happened when her mom went out of town and Mary had gone to the airport in Greenville to see her off." The State also filed a motion to amend indictment "to change the date of offense from `August 16, 1993' to `on or about or between August 10th14th, 1991.'"
¶ 7. Before the trial court called the case for trial in the courtroom, the State presented its motion to amend the indictment, which Givens opposed because "a three-year gap is more unreasonable and ... is a substantive change of time as to when these offenses occurred." Givens's counsel argued that the amendment was "more than just a matter of form." The State responded that the amendment was "allowable under Rule 7.09 of the Uniform Rules of County and Circuit Court Practice, and this does not result in any prejudice to the defendant." The trial judge asked Givens's counsel how Givens would "be prejudiced in terms of putting forth a defense by" the proposed amendment to August 11-14, 1991, to which counsel replied, "[W]e prepared our defense on the week of or a few weeks before and after August, 1993 date." There are indications in the record that Mary's mother had also attended an out-of-state conference in August 1993.
¶ 8. The trial court asked Givens's counsel to confer with Givens about whether a continuance would help his defense, and, if a continuance would help his client's defense, how much time would Givens need. Givens and his counsel retired from the trial court's presence to discuss the trial court's inquiries. When they returned before the trial court, Givens's counsel announced that they would "proceed today," but that they did "not give up [their] objection or waive ... [their] objections to the amendment of the indictment." The trial court granted the State's *85 motion to amend the indictment and signed an order amending indictment.
¶ 9. Next, the State moved the Court to conduct an "803 hearing" regarding testimony about other acts which occurred after the incident in August 1991. Included in these other acts were an incident near the end of the 1995 school year when Mary was at home sick. Mary's mother was away at work, and Mary's brother was at school. Mary was in her mother's bed watching television when Givens sat beside her on the bed, put his arm around her, and began rubbing and feeling on Mary's back with his hand under her clothing. There were other incidents in which Givens came to Mary's bedroom where she was sleeping and raised the covers to look at her lying in bed. To support its motion, the State called Tracy Ann Mohdzain, Investigator Quinton, and Mary's mother, all of whom established that Mary had told them about one or more of these incidents. After the State rested on its motion, the State argued that these other incidents were needed "to tell the complete story" about the lapse of more than four years between the date of the crime and the date that Mary told her mother about it. The State further argued that these other incidents negated Givens's anticipated claim that his feeling Mary's buttocks was a mistake because when he did that, he had been dreaming of his wife.
¶ 10. After the trial judge conducted a hearing pursuant to Mississippi Rule of Evidence 803(25) to determine whether Mary's statements to Mohdzain, Investigator Quinton, and her mother were reliable, he reviewed all twelve factors suggested in the portion of the comment to Rule 803 which pertain to the "tender years exception," and held that Mary's statements to those three witnesses were sufficiently reliable to be admitted through their testimony. Furthermore, the State proposed to introduce evidence of the incidents involving Mary subsequent to the one for which Givens was indicted for two reasons. First, the State proposed to offer these incidents to explain why Mary had waited more than four years to tell her mother what Givens had done. Second, the State anticipated that Givens might admit that he had felt of Mary's buttock but explain that he did so only while he was dreaming of his absent wife. Thus, the State reasoned that although the other incidents occurred subsequently to August 1991, they were necessary to rebut Givens's testimony that he had touched Mary by mistake. The trial court conducted a hearing to determine whether Mississippi Rule of Evidence 403 would permit the State to introduce evidence of these incidents. After the trial court heard the State's and Givens's arguments on whether the probative value of these incidents was outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury," it ruled as follows:
Here, I think we are primarily concerned with whether or not the probative value is substantially outweighed by the danger of unfair prejudice. It is a small possibility of confusion of the issues and misleading the jury. This is a close call. The Court does feel that without this explanation as to the gap in time and without this explanation of absence of mistake or accident, the jury would not have the whole story, and the Court finds that the probative value does, therefore, substantially outweigh the danger of unfair prejudice, confusion of the issues, etc. So the Court will allow that testimony.

B. Trial
¶ 11. Following jury selection and opening statements by each party, the State called its first witness, Tracy Mohdzain. Ms. Mohdzain described her job as a social worker, and she began to speak of the conversation that she had with Mary at the police station. However, pursuant to an objection by Givens's counsel regarding the order in which the witnesses were presented, Mohdzain vacated the witness stand so that Mary could testify.
¶ 12. Mary communicated the first incident of her stepfather's fondling her in August of 1991. She also testified that on about eight occasions since that incident, Givens had entered her bedroom during the night and lifted the bedcovers and sometimes touched her. She said that Givens had also felt her naked *86 bottom once when she was sick at home just before Christmas in 1995. Mary approximated the date of the first incident, recalling that she had gone to take her mother to the Greenville Airport. Finally, she testified concerning her statement to Officer Quinton at the police department.
¶ 13. Tracy Mohdzain again took the witness stand and described Mary's demeanor while they discussed Givens's actions that night at the police department. She noted that Mary told her that Givens had touched her again some time during the 1995 school year.
¶ 14. The State then called Officer Bill Quinton of the Cleveland Police Department to testify. Officer Quinton established venue for the alleged crime and recounted the investigation which led to the arrest of Robert Givens. He explained that Givens declined the opportunity to give a taped statement, but he read and signed the statement that Quinton typed. Quinton read the following portion of Givens's statement for the jury:
I was in our bed, Beth and mine, and when [Mary] was lying down beside me, and I got hot and sweaty, and I touched her on her bottom with my hand inside her panties, and I thought about what I was doing, and I removed my hand. She got up and went into the other room and I thought about what I had done, and I was ashamed. I knew it was wrong at the time and I regretted doing this act and I have attempted to stay my distance from her because of these abnormal feelings.
Quinton also testified about his conversation with Mary, with her mother present, at the police station after Mary had spoken to Tracy Mohdzain.
¶ 15. Next, the State called Mary's mother to the witness stand. She related the January 1996 conversation in which Mary told her about Givens's actions. She explained that she had estimated the date of the initial incident based upon the certificate that she received for attending the conference in Hazleton, Minnesota. Her mother then testified that Mary told her that Givens had come into her bedroom and looked under the covers as recently as December of 1995. Lastly, Mary's mother commented that Mary had developed and exhibited hostility toward Givens. Finally, the State called Rob Linkous to testify. However, Linkous was excused after Givens agreed to stipulate that Linkous would have testified that he saw Givens read and sign the typed statement. After the State rested its case, the defense moved for a directed verdict which the court denied.
¶ 16. Robert Givens was the lone witness presented by the defense. He testified that he remembered the incident when he touched Mary's buttocks. He said that he had returned home after work, gotten into bed and fallen asleep. Givens then elaborated that he was asleep and dreaming, and when he awoke his hand was touching Mary's buttocks. He said that he removed his hand and he denied that he had touched Mary to satisfy his lustful purposes. Givens then described the occasion when he stayed at home with Mary when she was sick. He said that Mary was on the bed and he "laid down next to her, and [he] was rubbing her back". He fell asleep and his hand touched Mary's buttocks. He asserted that he never touched Mary's buttocks except for the two times which he discussed in this testimony.
¶ 17. Givens then read the following portion of the statement which Officer Quinton had prepared:
I realized what I did was not considered normal and I feel extremely guilty pertaining to these actions. I realize that I need counseling to help me to determine how these feelings are being harbored inside me and to help me to dissolve this problem. The reason for giving this statement is that I did not want [Mary] to have to go through a lengthy trial process and me attempt to prove what she said was untrue, when it was.
Givens testified that the statement was true, but he averred that he never touched Mary for sexual purposes. He acknowledged that he knew what he had done was wrong and he regretted doing it. Givens explained that he had only lifted Mary's bedcovers when he was looking for some of his tools which he thought Mary might have taken and that he usually found the tools under Mary's bedcovers. Givens reiterated that he understood *87 that what he did was not normal, that he felt extremely guilty about his actions, and that he knew that he needed counseling.

III. REVIEW, ANALYSIS, AND RESOLUTION OF THE ISSUES

A. Givens's first issue
¶ 18. For his first issue, Givens asserts that the trial court erred when it granted the State's motion to amend the indictment to change the date of the offense from August 16, 1993, to "on or about August 10, 1991, through August 14, 1991." Givens argues that this amendment was "a change of substance and not of form as contemplated by Rule 7.09 of the Uniform Rules of Circuit and County Court Practice."[2]

1. Discussion
¶ 19. Rule 7.06 of the Uniform Rules of Circuit and County Court provides that "[f]ailure to state the correct date shall not render the indictment insufficient." URCCC 7.06. Furthermore, Section 99-7-21 of the Mississippi Code allows the court to "cause the indictment to be forthwith amended" to cure any formal defect. Miss.Code Ann. § 99-7-21 (Rev.1994). Although Rule 7.09 denies the trial court authority to make substantive amendments of indictments, the Mississippi Supreme Court has observed that amending the date of the alleged offense is a change of form only where time is not an essential element or factor in the indictment. Baine v. State, 604 So.2d 258, 260-261 (Miss. 1992). Furthermore, the Court has upheld amendments to indictments which effected a change in the date of the offense charged. See Kincaid v. State, 711 So.2d 873, 877 (Miss.1998) (allowing the trial court to change the date of the indictment by one month by entering an order so amending the indictment and holding that issue was waived by defense counsel during guilty plea hearing); Eakes v. State, 665 So.2d 852, 860 (Miss.1995) (finding that the lack of specific dates in the indictment was not fatal where the defendant was fully and fairly advised of the charges against him); Norman v. State, 385 So.2d 1298, 1301 (Miss.1980) (involving the trial judge's specifically finding absence of surprise or prejudice); Deaton v. State, 242 So.2d 452, 453 (Miss.1970) (finding discrepancy did not show surprise or prejudice and conviction was sustained although the offense occurred on August 16 and the indictment alleged it occurred on November 14).
¶ 20. "[A] change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case." Shelby v. State, 246 So.2d 543, 545 (Miss.1971). However, Rule 7.09 also provides that "[a]mendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." URCCC 7.09. The well-established test in this jurisdiction for determining whether the defendant is prejudiced by the amendment depends on whether a defense under the original indictment would be equally available under the amended indictment. Byrd v. State, 228 So.2d 874, 875-76 (Miss.1969) (cited with approval in Lester v. State, 692 So.2d 755, 775 (Miss.1997)). Furthermore, the court must determine whether the evidence the defendant plans to present would be equally applicable to the amended indictment. Byrd, 228 So.2d at 875-76. If both the defense and the evidence remain unhindered after amending the indictment, then the amendment is considered to be an amendment of form rather than substance. Griffin v. State, 540 So.2d 17, 21 (Miss.1989); Doby v. State, 532 So.2d 584, 586 (Miss.1988); Reed v. State, 506 So.2d 277, 279 (Miss.1987); Byrd, 228 So.2d at 876.

2. Analysis and resolution

¶ 21. Givens argued before the trial court that the amendment of the indictment was *88 "more than just a matter of form." He renews this argument before this court and adds that "the defense had prepared to meet the allegation as set forth on August 16, 1993, which was mooted by change in the time of two years." In other words, Givens argues that the amendment of the indictment charged him "for an offense for which he had not been charged by the grand jury, which the trial court could not do."
¶ 22. Givens cites no case in which the Mississippi Supreme Court has opined that an amendment to an indictment which changed only the date of occurrence of the crime, without more, also changed the crime itself. If anything, the supreme court has held to the contrary. See Baine, 604 So.2d at 260-61. This Court holds that in the case sub judice the amendment to the indictment did not change the offense with which Givens is charged, nor did it add elements to the offense or charges to the indictment. See Byrd, 228 So.2d at 875. From our review of the facts established by the evidence in the record, this Court further finds that the defense of accident or mistake to which Givens testified was not prejudiced by the amendment of the date on the indictment. Indeed, Givens does not claim that it did. Nothing in the record indicates that Givens intended to present a time-specific defense such as alibi. Reversal is not necessary where the same defense and the same witnesses are available for both the original date and the amended date on the indictment. Doby v. State, 532 So.2d 584, 587 (Miss.1988).
¶ 23. The fact that Givens declined to request a continuance after he had conferred with his counsel in response to the trial court's inquiry after the trial court granted the State's motion to amend the date in the indictment buttresses our finding that Givens incurred no prejudice from the amendment of his indictment. Hudson v. State, 311 So.2d 648, 649 (Miss.1975); see generally Lester v. State, 692 So.2d 755, 774 (Miss. 1997). In Hudson, the defendant requested a continuance which the court denied. Hudson, 311 So.2d at 649. The Mississippi Supreme Court noted that the defendant failed to offer any evidence that he could have produced a stronger defense if the continuance had been granted, so the Court found no merit in the claim that the amendment to the indictment prejudiced the defendant. Id. The Mississippi Supreme Court has refused to find error warranting reversal where an appellant "raised no credible claim of unfair surprise or prejudice, nor did he seek a continuance or any other remedy." Wilson v. State, 515 So.2d 1181, 1183 (Miss.1987). Givens cannot complain that he was prejudiced or that he was unable to determine the date of the charge, so we resolve his first issue against him and affirm the trial court's granting the State's motion to amend the indictment. Rushing v. State, 711 So.2d 450, 455 (Miss.1998).

B. Givens's second issue
¶ 24. There are two facets to the appellant's second issue. The first facet is whether the trial court erred when it allowed the State to introduce evidence of subsequent incidents when Givens either touched Mary's buttocks or lifted the linen of the bed in which she slept, which we choose to denominate "bad acts." The second facet of this issue is whether the trial court erred when it failed sua sponte to give the jury a limiting instruction concerning Givens's other bad acts.

1. Standard of Review

¶ 25. Givens bases his second assignment of error on Rule 404(b) of the Mississippi Rules of Evidence (M.R.E.) which states:
(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
¶ 26. Evidence of other crimes, wrongs, or acts is admissible if the present case and the other offense are "so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences." Neal v. State, 451 So.2d 743, 759 (Miss.1984). The rationale for admitting evidence of certain closely related acts is that the State "has a legitimate *89 interest in telling a rational and coherent story of what happened...." Brown v. State, 483 So.2d 328, 329 (Miss.1986) (citing Turner v. State, 478 So.2d 300, 301 (Miss. 1985)); Neal v. State, 451 So.2d 743, 759 (Miss.1984).
¶ 27. The Mississippi Supreme Court has recognized that presenting a complete story of the alleged offense might require revealing information about other wrongs perpetrated by the defendant. Brown, 483 So.2d at 329. For example, in Hosford v. State, 560 So.2d 163, 165 (Miss.1990), the supreme court explained that it had "held in similar cases of sexual battery involving small children that admission of evidence of `substantially similar prior sexual acts with the same person' are properly admitted." In White v. State, 520 So.2d 497, 500 (Miss.1988), the supreme court cited a number of cases in all of which, "this Court held that such evidence [that the accused had forced his victim, a child under the age of twelve-years, to have sex with him two or three times a week for a period of six months] is admissible in this limited situation to show appellant's lustful, lascivious disposition toward his particular victim, especially where, as here, the victim was under the age of consent." (emphasis added).
¶ 28. Nevertheless, if evidence of other bad acts is deemed relevant and generally admissible as an exception under Mississippi Rule of Evidence 404(b), then the court must determine whether the probative value of the evidence is substantially outweighed by the considerations of Mississippi Rule of Evidence 403. Lester v. State, 692 So.2d 755, 779 (Miss.1997); Ballenger v. State, 667 So.2d 1242, 1256 (Miss.1995). The trial judge, in his sound discretion, determines the relevance of evidence at trial, and that determination will not be reversed unless the reviewing court finds clear abuse of discretion. Bounds v. State, 688 So.2d 1362, 1369 (Miss. 1997), citing Watts v. State, 635 So.2d 1364, 1367 (Miss.1994).

2. Analysis

a. Admission of Givens's bad acts into evidence
¶ 29. In Neal v. State, 451 So.2d at 759, the Mississippi Supreme Court recognized the necessity of allowing the state to present adequate information to tell a logical, complete story. The Court observed that "if evidence of other crimes had been left out of the defendant's confession, it would have been reduced to nonsense" and would have severely diminished the credibility of the witness who testified about the confession. Id. In the case sub judice, the State contemplated that the lapse of more than four years between the offense charged in the indictment and Mary's reporting the incident to her mother could adversely affect Mary's credibility or cause the jury to question Mary's motives for reporting the incident almost five years later. However, the State argued that if Mary could testify regarding the similar incidents between the time of the crime charged and time of reporting the crime, the jury might more fully understand the apparent delay in reporting the incident.
¶ 30. The State faced a similar challenge in Williams v. State, 543 So.2d 665, 666 (Miss. 1989), because the rape victim waited nine months before she told her grandmother about the attack. Over the appellant's objection, the State elicited answers from the victim about other threats which the appellant made to her to show that the victim was afraid of the appellant. Id. The supreme court opined that "the trial judge did not abuse his discretion in admitting the testimony of the victim establishing that she was afraid of the defendant and was reluctant to report the crime soon after it occurred for that reason." Id. at 667. White and Williams establish that Givens's other "bad acts," even though they occurred after the incident for which the grand jury indicted Givens, were relevant to the State's explanation of Mary's delay in telling her mother about the incident and to Givens's defense of accident or mistake. Therefore, we hold that the trial court did not err when it admitted into evidence Givens's "bad acts."

b. Trial court's failure to give a limiting instruction sua sponte

¶ 31. Rule 105 of the Mississippi Rules of Evidence provides that "[w]hen evidence which is admissible ... for one purpose *90 but not ... for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." M.R.E. 105 (emphasis added). Nevertheless, in Smith v. State, 656 So.2d 95, 100 (Miss.1995), the Mississippi Supreme Court effectively amended Rule 105 to delete its requirement that the trial court only instruct the jury upon request. The supreme court opined:
Nevertheless, we must be mindful of our rules. We have promulgated M.R.E. 105 which clearly contemplates that restrictive instructions be given upon request and as the Comment acknowledges, that in the absence of a request, there is no error. M.R.E. 105 and Comment. We are loath to reverse for plain error in the face of a rule so clear. We say for the future, however, that wherever 404(b) evidence is offered and there is an objection which is overruled, the objection shall be deemed an invocation of the right to M.R.E. 403 balancing analysis and a limiting instruction. The court shall conduct an M.R.E. analysis and, if the evidence passes that hurdle, give a limiting instruction unless the party objecting to the evidence objects to giving the limiting instruction.
Id. (emphasis added) At issue in Smith was the admission into evidence of appellant's prior sales of "drugs" as evidence of his intent to sell the crack cocaine for the possession of which Smith had been indicted. Id. at 98. The supreme court reversed Smith's conviction of possession of cocaine with intent to sell because it found the State's evidence insufficient to establish that Smith possessed the cocaine with the intention to sell it. Id. at 102. Instead, the court remanded the case to the trial court for resentencing on the charge of possession of cocaine only. Id.
¶ 32. In Bounds v. State, 688 So.2d 1362, 1369 (Miss.1997), the supreme court reviewed the Smith ruling and observed that "the Court analogized the 404(b) situation to impeachment by prior conviction under M.R.E. 609, where it was suggested that a limiting instruction be given in order to minimize the risk that the jury will infer guilt from the previous conduct." 688 So.2d 1362, 1369 (Miss.1997). In Bounds the court reaffirmed its edict in Smith that the court shall conduct an M.R.E. analysis and, if the evidence passes that hurdle, give a limiting instruction. Bounds, 688 So.2d at 1372. Nevertheless, the supreme court continued:
Because the case sub judice was heard prior to the definitive ruling regarding limiting instructions in Smith, the trial judge was not bound by its holding. Thus, standing alone, it was not reversible error for the trial judge to not give, sua sponte, a limiting instruction on the M.R.E. 404(b) evidence. The defense attorney had the burden of objecting contemporaneously and requesting the limiting instruction. However, as this case is to be retried, any retrial should be conducted according to and within the guidelines of Smith.

Id. (emphasis added). The case sub judice was tried on May 8, 1996, one year after Smith was decided by the supreme court on May 11, 1995. Rule 105 notwithstanding, it is apparent in the case sub judice, that Smith and Bounds render as error the trial judge's failure to instruct the jury sua sponte about Givens's bad acts.
¶ 33. However, we find this error to be harmless. In Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216, 221 (Miss.1969), the supreme court discussed the distinction between harmless and reversible error as follows:
To warrant reversal, two elements must be shown: error, and injury to the party appealing. Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case; it is prejudicial, and ground for reversal, only when it affects the final result of the case and works adversely to a substantial right of the party assigning it. Obviously, in order for the rule of harmless error to be called into play in support of a judgment, the judgment must be otherwise supportable, and will be reversed when there is nothing in the pleadings or evidence to support it....
(quoting 5 Am.Jur.2d Appeal and Error sec. 776 (1962)). Later, the supreme court related *91 a more stringent concept of "harmless error" in Forrest v. State, 335 So.2d 900, 903 (Miss.1976), when it opined, "An error is harmless only when it is apparent on the face of the record that a fair minded jury could have arrived at no verdict other than that of guilty." (citations omitted).
¶ 34. As we noted, Givens testified in his behalf. When his attorney asked Givens if he remembered the incident alleged to have occurred one evening between August 10 through August 14, 1991, Givens replied, "Most definitely." The record next contains his explanation of the incident for which the grand jury indicted him:
I was asleep, dreaming, and what I was dreaming and what I felt with my hand did not coincide. I woke up. I said, "Oh, God," and removed my hand because I realized that it was [Mary] in the bed and rolled over away from her and just"I can't believe this. I can't believe this." And at that time [Mary] got up and got out of the bed, went around the bed, passed by me, out the door, and, I assume, back to her room.
Givens's counsel then questioned his client about the later incident where Givens allegedly stroked Mary's buttock before Christmas in 1995. Givens explained that Mary was indeed "home sick from school" and that he rubbed her back to comfort her. When his counsel asked Givens, "[W]ere you sexually aroused at that time [before Christmas in 1995]?," Givens replied, "Absolutely not. I was trying to comfort her. She was sick."
¶ 35. We also noted that Givens's counsel questioned his client about the portion of the statement he had signed for investigator Bill Quinton in which Givens acknowledged that what he had done "was not considered normal" and that he felt "extremely guilty pertaining to these actions." Givens further acknowledged to Quinton that he needed "counseling to help me to determine how these feelings are being harbored inside me and to help me to dissolve this problem."
¶ 36. The State's initial cross-examination of Givens was as follows:
Q. Mr. Givens, you did give this statement to Bill Quinton?
A. Yes.
Q. Voluntarily and freely on your own?
A. Yes.
About the second occasion when Givens touched Mary's buttock before Christmas in 1995, Givens responded under the State's cross-examination as follows:
She was lying on the bed. I laid [sic] down next to her. She put her head on my chest, and I rubbed her back. In the process of rubbing her back, I began to doze off myself. My hand touched her bottom, and I laid it out to the side to get it away from her.
Givens also admitted that he had gone into Mary's bedroom to look for his tools which Mary would sometimes take there and leave beneath the covers of her bed.
¶ 37. The Mississippi Supreme Court's reaffirming its Smith de jure amendment of Rule 105 to eliminate the request for a limiting instruction in Bounds demonstrates that the trial court's failure to instruct the jury sua sponte about the limited purpose for which Givens's other bad acts were admitted was substantial error. However, Mary's positive testimony combined with Givens's written statement which he signed in the presence of investigator Quinton and his testimony during the trial of this case remains persuasive that this error did not "affect[] the final result of [the case sub judice or] work[] adversely to a substantial right of [Givens]." See Jaquith, 224 So.2d at 221. To this Court, "it is apparent on the face of the record that a fair minded jury could have arrived at no verdict other than that [Givens was guilty of `fondling' Mary]." See Forrest, 335 So.2d at 903. Therefore, this Court holds that the trial court's failure sua sponte to give a limiting instruction about Givens's other "bad acts" was harmless error, and this Court accordingly resolves Givens's second issue adversely to him. Nevertheless, this Court thinks it appropriate to conclude our resolution of Givens's second issue with the following quotation from Townsend v. State, 605 So.2d 767, 771 n. 1 (Miss.1992): "[L]ower courts and prosecuting attorneys must not commit errors on the speculation that the Supreme Court [or the Court of *92 Appeals] will affirm on the ground of harmless error."

C. Givens's third issue
¶ 38. For his third issue, Givens argues both that the evidence was insufficient to support the jury's verdict and that the jury's verdict was against the overwhelming weight of the evidence. Indeed, the State suggests that Givens has "blurred" the distinction between "weight and sufficiency [of the evidence]new trial versus discharge." Because we agree with the State, we analyze and resolve whether the evidence was sufficient to support the jury's verdict and whether the jury's verdict was against the overwhelming weight of the evidence.

1. Sufficiency of the evidence

a. Standard of review
¶ 39. If the court finds that the evidence is insufficient to sustain the guilty verdict, "the verdict may not stand and ... the defendant must be finally discharged." May v. State, 460 So.2d 778, 781 (Miss.1984), cited in Collier v. State, 711 So.2d 458, 461 (Miss.1998). Reversal of a conviction will only be granted "where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Wetz v. State, 503 So.2d 803, 808 (Miss.1987). Givens, citing Miller v. State, 198 Miss. 277, 22 So.2d 164 (1945), incorrectly states that the standard for determining the sufficiency of the evidence implies balancing reasonable doubt adduced by the state against the weight of the testimony consistent with innocence. However, the current rule requires that all credible evidence presented at trial must be considered in the light most favorable to the verdict and must be accepted as true. Wetz, 503 So.2d at 808. Additionally, the trial judge is required to accept as true all reasonable inferences that may be drawn from the evidence adduced by the State, and to disregard evidence favorable to the defendant. Clemons v. State, 460 So.2d 835, 839 (Miss.1984); Bullock v. State, 391 So.2d 601, 606 (Miss.1980).
¶ 40. Moreover, the standard of review for the denial of directed verdict, peremptory instruction, and judgment notwithstanding the verdict are identical. Coleman v. State, 697 So.2d 777, 787 (Miss.1997). On appeal, this Court reviews the trial court's last decision when it reviewed a challenge to the sufficiency of the evidence. Wetz, 503 So.2d at 807 n. 3. In this case, the trial court's last opportunity to review the sufficiency of the evidence was Givens's motion for judgment notwithstanding the verdict.

b. Analysis of whether the evidence was sufficient to support the jury's verdict
¶ 41. Givens compares this case to a 1915 Mississippi case in which the Court stated the following:
We have carefully gone over all the evidence in this case, and we can find no single circumstance that points to the defendant's guilt with that degree of certainty which the law demands. Taking all the circumstances together, there is no legal proof of guilt. The most that can be said for the state's case is that there were some suspicious circumstances proven against the defendant.
Hunt v. State, 108 Miss. 588, 67 So. 57 (1915). Givens also cites an older case, City of Hazlehurst v. Byrd, 101 Miss. 57, 57 So. 360 (1912), to support his suggestion that the verdict should not be predicated merely upon suspicion of guilt.
¶ 42. Whether Givens touched Mary on her buttocks with his hand which he had placed beneath her underpants as she lay sleeping in bed with him is not at issue in this case. Givens freely admitted in his direct examination that he had touched his stepdaughter in that manner. Instead, the issue was whether he touched her "for the purpose of gratifying his lust, or indulging his depraved licentious sexual desires," as the grand jury had charged in its indictment. Givens denied that he had touched Mary's buttocks to satisfy his sexual desire but, instead, claimed that he had done so by accident or mistake. However, Givens's statement which investigator Bill Quinton typed and Givens signed contradicted Givens's claim of accident or *93 mistake, as did subsequent incidents involving Givens and Mary, which incidents we related in our review and resolution of Givens's second issue.
¶ 43. It was for the jury to determine whether they believed or disbelieved Givens's defense that his touching Mary on her buttocks was an accident or mistake, which resulted from his dreaming about his absent wife. As the Mississippi Supreme Court opined in Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979):
As is usual in jury cases, the evidence conflicted, but the conflict does not necessarily create a "reasonable doubt" of appellant's guilt. Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject, the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into findings of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.
In the case sub judice, it was "enough that the conflicting evidence presented a factual dispute [about Givens's motive for touching his stepdaughter]," and, therefore, this Court affirms the trial court's denial of Givens's motion for directed verdict which was made after Givens testified and rested. We find that the evidence was sufficient to sustain the jury's verdict that Givens was "Guilty as charged."

2. Weight of the evidence

a. Standard of review
¶ 44. Rule 6.01 of the Uniform Rules of Circuit and County Court provides that "[r]ule Series 6 through 12 are applicable only to criminal proceedings." URCCC 6.01. Rule 10.05 authorizes the court to "grants a new trial on any of the following grounds:.... If the verdict is contrary to law or the weight of the evidence." URCCC 10.05. The trial judge employs his sound discretion in deciding whether a new trial is required in the interest of justice or whether the jury's verdict is contrary to law or against the weight of the evidence. Wetz, 503 So.2d at 812. A new trial should not be granted unless the jury's verdict is "so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice." Id.; Malone v. State, 486 So.2d 360, 366 (Miss. 1986); Groseclose v. State, 440 So.2d 297, 300 (Miss.1983); Pearson v. State, 428 So.2d 1361, 1364 (Miss.1983). The motion for new trial is not considered de novo on review. Veal v. State, 585 So.2d 693, 695 (Miss.1991).

b. Analysis

¶ 45. Givens's "blurring" the distinction between "weight and sufficiency [of the evidence]" has resulted in his failure to offer a specific explanation about why the jury's verdict of his guilt was against the weight of the evidence. Absent Givens's suggestion or argument specifically explaining the manner in which the jury's verdict was against the overwhelming weight of the evidence, this Court resorts to its review and resolution of Givens's issue that the evidence was insufficient to support the jury's verdict of his guilt of "fondling" and affirms the trial court's denial of Givens's motion for a new trial. The jury's verdict was not against the weight of the evidence.

IV. CONCLUSION
¶ 46. The trial court committed no error in granting the State's motion to amend the indictment to indicate the correct date on which the incident occurred for which the grand jury indicted Givens. The amendment did not change the offense of fondling, and Givens's defense, i.e., accident or mistake, remained the same. Givens testified that he "[m]ost definitely" remembered the incident which led to his indictment. Therefore, time was not an essential factor in this crime. This rendered the amendment one of form only.
*94 ¶ 47. The trial court properly admitted into the record evidence of Givens's other bad acts not only because they were relevant to the nature of the relationship between him and his stepdaughter but also because they were relevant to rebutting Givens's defense of "accident or mistake." Although the lower court ought to have given a limiting instruction regarding the purpose of admitting Givens's other bad acts, that error was harmless for the reasons which we have related.
¶ 48. The trial court acted within its discretion and thus did not err when it denied Givens's motion for a directed verdict or judgment notwithstanding the verdict because the State's evidence in the form of Mary's testimony about the incident and Givens's admission that he had touched her buttocks with his hand was sufficient evidence to support the jury's verdict that Givens was "Guilty as charged." Neither did the trial court err when it denied Givens's motion for new trial inasmuch as the matter of Givens's motive for touching his stepdaughter was properly for the jury's resolution. This Court remains confident that our affirming the trial court's denial of Givens's motion for a new trial does not "sanction an unconscionable injustice." Thus, we affirm the trial court's judgment of Givens's conviction of touching a child for lustful purposes and its sentence of Givens to serve a term of eight years in an institution under the supervision and control of the Mississippi Department of Corrections.
¶ 49. THE BOLIVAR COUNTY CIRCUIT COURT'S JUDGMENT OF THE APPELLANT'S CONVICTION OF FELONY TOUCHING OF A CHILD AND ITS SENTENCE OF APPELLANT TO SERVE A TERM OF EIGHT YEARS IN AN INSTITUTION UNDER THE SUPERVISION AND CONTROL OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ARE AFFIRMED. SENTENCE IMPOSED TO RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE TAXED TO BOLIVAR COUNTY.
BRIDGES, C.J., THOMAS, P.J., and DIAZ, HERRING, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.
McMILLIN, P.J., not participating.
NOTES
[1] Before July 1, 1998, Section 97-5-23(1) read as follows:

Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of fourteen (14) years, with or without the child's consent, or a mentally defective, mentally incapacitated or physically helpless person as defined in Section 97-3-97, shall be guilty of a felony and, upon conviction thereof, shall be fined in a sum not less than One Thousand Dollars ($1,000.00) nor more than Five Thousand Dollars ($5,000.00), or be committed to the custody of the State Department of Corrections not less than two (2) years nor more than fifteen (15) years, or be punished by both such fine and imprisonment, at the discretion of the court.
Miss.Code Ann. § 97-5-23(1) (Supp.1997). As of July 1, 1998, the age of the child was increased from "under the age of fourteen (14) years" to "under the age of sixteen (16) years." Laws, 1998, ch. 549, § 5, eff from and after July 1, 1998.
[2] The portion of Rule 7.09 relevant to the amendment of this indictment reads:

All indictments may be amended as to form but not as to the substance of the offense charged.... Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.
URCCC 7.09