828 So.2d 801 (2001)
John REDHEAD, Appellant,
v.
ENTERGY MISSISSIPPI, INC., Appellee.
No. 1999-CA-02135-COA.
Court of Appeals of Mississippi.
October 16, 2001.
Rehearing Denied February 19, 2002.
*803 John E. Mulhearn, Jr., Natchez, Earl Wayne Smith, Attorney for Appellant.
R. Kent Hudson, Natchez, James Lawton Robertson, James W. Snider, Jr., Jackson, Attorney for Appellee.
Before KING, P.J., BRIDGES, and IRVING, JJ.
BRIDGES, J., for the court:
¶ 1. This case comes from the Amite County Circuit Court, Honorable Forrest A. Johnson Jr. presiding. John Redhead sued Entergy Mississippi for property damages stemming from a fire on Redhead's tree farm. The jury found for Entergy. Redhead has appealed to this Court and comes now with several issues:
OVERWHELMING WEIGHT OF THE EVIDENCE
1. WHETHER THE COMBINATION OF COMMON SENSE COUPLED WITH THE OVERWHELMING WEIGHT OF THE EVIDENCE DICTATES THAT THE VERDICT OF THE JURY WAS AGAINST THE CLEAR, GREAT AND OVERWHELMING WEIGHT OF THE EVIDENCE AND SO CONTRARY TO THE EVIDENCE AS TO EVINCE BIAS, PASSION AND PREJUDICE ON THE PART OF THE JURY.
EVIDENTIARY MATTERS
2. WHETHER IT WAS ERROR FOR THE COURT TO ADMIT TESTIMONY OVER PLAINTIFF'S OBJECTION AS TO THE PURCHASE PRICE PAID BY JOHN REDHEAD FOR THE 315 ACRE TRACT.
*804 3. WHETHER IT WAS ERROR FOR THE COURT TO PRECLUDE TESTIMONY FROM JAMES McCREIGHT, JOHN REDHEAD, TIM REDHEAD, NORWOOD REDHEAD AND EARL ALFORD AS TO THE PLACE THE FIRE STARTED UNDER MRE 701.
4. WHETHER IT WAS ERROR UNDER MRE 803(8)(C) TO EXCLUDE THE AMITE COUNTY FORESTER'S REPORT REFLECTING THE CAUSE OF THE FIRE BEING THE "POWER LINES".
5. WHETHER IT WAS ERROR TO DENY PLAINTIFF'S COUNSEL THE RIGHT TO CONDUCT CROSS EXAMINATION OF ENTERGY'S EMPLOYEE PHIL TIGRETT AFTER EXTENSIVE DIRECT EXAMINATION BY ENTERGY'S COUNSEL.
6. WHETHER IT WAS ERROR FOR THE COURT TO RULE AS NOT "RELEVANT" A QUESTION BY PLAINTIFF'S COUNSEL DIRECTED TO DUNCAN ON CROSS EXAMINATION REGARDING THE TRIMMING OF TREES ON ENTERGY'S LINES AFTER ENTERGY RECEIVED A COMPLAINT AS TO THE TREES EARLIER IN SEPTEMBER, 1997 BEFORE THE FIRE.
7. WHETHER IT WAS ERROR TO EXCLUDE TESTIMONY REGARDING ENTERGY'S ACTS OF TRIMMING TREES ON THE REDHEAD PROPERTY AFTER THE FIRE AS A CLEAR EXCEPTION TO MRE 407.
8. WHETHER IT WAS ERROR FOR THE TRIAL COURT TO PROHIBIT WITHOUT ANY BASIS THE TESTIMONY OF PLAINTIFF'S EXPERT AS TO THE ULTIMATE ISSUE OF NEGLIGENCE ON THE PART OF ENTERGY.
9. WHETHER IT WAS ERROR FOR THE TRIAL COURT TO PREVENT PLAINTIFF FROM CALLING A DULY SUBPOENAED WITNESS WHO WAS A COMBINATION FACT WITNESS AND EXPERT FOR THE DEFENDANT ENTERGY.
JURY INSTRUCTION MATTERS
10. WHETHER THE TRIAL COURT COMMITTED ERROR IN TREATING THE CASE SOLELY AS A NEGLIGENCE CASE RATHER THAN A CASE PURSUANT TO § 95-5-10 OF THE MISSISSIPPI CODE ANNOTATED OF 1972, AS AMENDED, AND IN FAILING TO INSTRUCT THE JURY BASED UPON § 95-5-10, SUPRA.
11. WHETHER THE TRIAL COURT COMMITTED ERROR IN FAILING TO GIVE INSTRUCTION "P-9".
12. WHETHER THE TRIAL COURT COMMITTED ERROR IN FAILING TO GIVE INSTRUCTION "P-10" AS PRESENTED BY THE PLAINTIFF INSTRUCTING THE JURY THAT ENTERGY WAS GUILTY OF NEGLIGENCE PER SE.
13. WHETHER THE COURT COMMITTED ERROR IN FAILING TO GRANT PLAINTIFF'S INSTRUCTION "P-12" BASED UPON THE DOCTRINE OF RES IPSA LOQUITUR.
14. WHETHER THE TRIAL COURT COMMITTED ERROR IN GIVING INSTRUCTION D-12 OVER PLAINTIFF'S OBJECTION.
15. WHETHER THE TRIAL COURT'S MIND SET AS TO PLAINTIFF'S INSTRUCTIONS"P-16", "P-17", AND "P-18" WAS ERRONEOUS.
DISCOVERY VIOLATION ISSUE
16. WHETHER THE TRIAL COURT COMMITTED ERROR IN FAILING
*805 TO FIND ENTERGY HAD COMMITTED A DISCOVERY VIOLATION NECESSITATING REVERSAL.
Finding no error, we affirm.

STATEMENT OF THE FACTS ¶ 2. On April 23, 1997, John Redhead purchased a 315 acre tract of land in Amite County for $385,000. The land had been planted with pine trees in 1988 by the previous owner. Entergy Mississippi held a right-of-way running east to west across Redhead's property. This right-of-way had been in existence since 1946, and the electrical line provided electricity for many adjoining property owners. Redhead had some structures built on the land, but did not make use of any electricity.
¶ 3. The power line crossing the property was a high voltage electrical line of about 8000 volts. The line consisted of a primary wire suspended four feet above a neutral wire, and the entire wire was held aloft by ten poles. From pole one to pole five, the wire was a bare or uninsulated wire. Then from pole five to pole seven, and north to pole ten, was a rubber coated insulated wire called a tree wire. This wire is insulated to prevent the bare wire from coming into contact with trees.
¶ 4. A wild fire began on Redhead's property on September 30, 1997. The fire was first noticed by an adjoining neighbor, Richard Sherburne, who saw the smoke and thought it was a controlled burn. Sherburne's power is supplied by the Entergy power line, and he noticed a blink in his power early that morning. Sherburne also testified there had not been any rain in the area lately and everything was very dry. Sherburne notified Redhead of the fire, and Redhead, his brother (Tim Redhead), and his father (Norwood Redhead) came and viewed the land.
¶ 5. Redhead sued Entergy on June 12, 1998, claiming the damage to his property was caused by the power line making contact with the trees on his land. Redhead argued Entergy had let trees grow into the right-of-way, and some of these trees touched the power lines, thus causing the fire. Redhead alleged Entergy failed to fulfill its duty to keep the right-of-way clear of trees and was liable for the damages. Entergy offered expert opinion testimony in the form of a burn expert, Mark Anderson, who testified regarding the source of the fire. Anderson testified the fire could not have started in the place Redhead claimed it did and also have behaved the way eyewitness testimony said it did. Entergy also presented the testimony of an electrical expert, Phillip Tigrett, who explained how the power lines and their safety measures worked. Tigrett testified that if temporary contact was made with the line there were reclosure devices on the power line which would have been triggered in a hundredth of a second, thereby shutting the line down. Tigrett also testified there were manual fuses on the line which would have blown if constant contact was made with the line. No extended black outs were reported on the line, so extended contact with the line could not have occurred. At the end of the trial, the jury found for Entergy. Redhead has now appealed to this Court.

STATEMENT OF THE LAW

STANDARD OF REVIEW
¶ 6. A motion for a new trial is left to the circuit court's discretion and raises issues regarding the weight of the evidence. Jackson v. State, 551 So.2d 132, 148 (Miss.1989). The standard of review for a challenge to the weight of the evidence is found in Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989):
In determining whether or not a jury verdict is against the overwhelming weight of the evidence, this Court must *806 accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial.
See also Isaac v. State, 645 So.2d 903, 907 (Miss.1994); Newsom v. State, 629 So.2d 611, 615 (Miss.1993); Burrell v. State, 613 So.2d 1186, 1190-91 (Miss.1993); Nicolaou v. State, 612 So.2d 1080, 1083 (Miss.1992); Parker v. State, 606 So.2d 1132, 1139-40 (Miss.1992).
¶ 7. "Evidentiary rulings are within the broad discretion of the trial court and will not be reversed absent an abuse of discretion." Dobbs v. State, 726 So.2d 1267 (¶ 25) (Miss.Ct.App.1998).
¶ 8. In reviewing the standard of review when dealing with jury instructions, this Court has stated "[r]ather, our job, as an appellate court, is to review the jury instructions as a whole to determine whether `the aggregate of the instructions, taken as a whole, fairly, though not necessarily perfectly, express the applicable primary rules of law.'" O'Flynn v. Owens Corning Fiberglas, 759 So.2d 526 (¶ 31) (Miss.Ct. App.2000).

ANALYSIS
OVERWHELMING WEIGHT OF THE EVIDENCE ISSUE
1. WHETHER THE COMBINATION OF COMMON SENSE COUPLED WITH THE OVERWHELMING WEIGHT OF THE EVIDENCE DICTATES THAT THE VERDICT OF THE JURY WAS AGAINST THE CLEAR, GREAT AND OVERWHELMING WEIGHT OF THE EVIDENCE AND SO CONTRARY TO THE EVIDENCE AS TO EVINCE BIAS, PASSION AND PREJUDICE ON THE PART OF THE JURY.
¶ 9. Redhead claims Entergy was guilty of negligence, and the jury verdict that Entergy was not liable is against the overwhelming weight of the evidence presented in this case. Redhead's argument goes through the elements of the tort of negligence (duty, breach, causation, and damages) and applies them to this case. This is done to prove the evidence presented in this case meets the elements of negligence, and thus the weight of the evidence should show Entergy liable. Entergy counters by pointing to the evidence supporting the verdict, such as the testimony of its burn expert, and the testimony regarding the safeguards surrounding the power lines.
¶ 10. In raising this issue, Redhead addressed each of the elements necessary to prove negligence has occurred. It should be noted that it is the jury's role, not this Court's, to act as finder of fact and determine whether such things as negligence have been proven. Andrews v. Jitney Jungle Stores of America, Inc., 537 So.2d 447, 450 (Miss.1989). While it may be true Entergy had a duty to keep the power lines clear of trees, Redhead has failed to prove this failure to trim caused the fire. To prove negligence Redhead must also prove causation, and since he failed to do this, the jury was correct in holding for Entergy.
¶ 11. The standard of review in challenges to a verdict based on the overwhelming weight of the evidence is that all of the facts supporting the verdict must be accepted as true and then this Court will only reverse if it finds the trial court abused its discretion by failing to grant a new trial. Thornhill, 561 So.2d at 1030. Taking Mark Anderson's testimony regarding the source of the fire as true, then it must be accepted that the fire originated from a section of the lot where the power *807 line was insulated. After doing several calculations, which took into account weather conditions of the day, Anderson testified Sherburne's sighting of the fire would not have been possible at the time Sherburne testified he saw the fire if the fire had started at the place Redhead claimed it did. This would mean the fire must have been started at a source other than the power line.
¶ 12. We must also accept as true the testimony regarding the power line safety measures. Phillip Tigrett testified the safety measures installed on the power line would have been triggered if there had been any contact with the line. The safety measures would then cut off all electricity to the line, and prevent electricity from going into the trees. Since only a blink was reported and no long term outages were reported along the line, then it could be assumed by the jury that no tree fell on the line.
¶ 13. After considering the burn origin evidence and the testimony regarding the safety measures, it is clear the fire was not caused by the power line. Since this is how the jury found, then it was not an abuse of discretion for the trial judge to refuse to order a new trial. This verdict does not cause any unconscionable injustice, and therefore we affirm as to this issue.
EVIDENTIARY ISSUES
2. WHETHER IT WAS ERROR FOR THE COURT TO ADMIT TESTIMONY OVER PLAINTIFF'S OBJECTION AS TO THE PURCHASE PRICE PAID BY JOHN REDHEAD FOR THE 315 ACRE TRACT.
¶ 14. Redhead argues the trial judge should not have allowed testimony of the purchase price Redhead paid for the land because it was not relevant under Mississippi Rule of Evidence 401 and was prejudicial under Mississippi Rule of Evidence 403 Entergy argues the evidence is relevant because it shows how the amount of damages Redhead was seeking was unreasonable. Entergy also argues the amount of a former sale is relevant to the comparable sales approach to determining the value of a piece of property.
¶ 15. Redhead paid $385,000 for the 315 acre tract of land at about $1220 an acre. This was five months before the fire. The amount of land damaged by the fire was seventy-five acres, and the amount of damages Redhead sought was $262,052.78. This damage estimate amounts to about $3494.04 per acre.
¶ 16. Rule 401 of the Mississippi Rules of Evidence deals with the relevance of evidence. It states "`Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Mississippi Rule of Evidence 401 is a broad rule, and if the evidence has any probative value, the rule favors admission. Williams v. State, 543 So.2d 665, 667 (Miss.1989). Admission of evidence under Rule 401 is left to the discretion of the trial court. Wilson v. State, 775 So.2d 735(¶ 12) (Miss.Ct.App.2000).
¶ 17. Rule 403 of the Mississippi Rules of Evidence deals with the exclusion of relevant evidence on the basis of prejudice. It states,
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
MRE 403. "This Court will not `engage anew in the 403 balancing process,' rather *808 its scope is limited to determining `whether the trial court abused its discretion in weighing the factors and admitting or excluding the evidence.'" General Motors Corp. v. Jackson, 636 So.2d 310, 314 (Miss. 1992) (citing Williams, 543 So.2d at 667, (quoting Foster v. State, 508 So.2d 1111, 1118 (Miss.1987))).
¶ 18. Redhead argues he simply got a good deal, and he should not suffer because of it. However, Redhead simply fails to prove how the trial court abused its discretion in allowing the testimony into evidence. The purchase price would be relevant in deciding the value of the damaged land, and rule 401 favors the broad admissibility of evidence. Williams, 543 So.2d at 667. Rule 403 would allow this testimony because the purchase price is probative in comparing the actual amount of damages and the reasonableness of the damages sought. Redhead fails to show how it was prejudicial to allow the purchase price into evidence. Additionally, such evidentiary rulings are in the trial court's discretion, and should not be reversed unless they amount to an abuse of discretion. Wilson, 775 So.2d at 735. Williams, 543 So.2d at 667. This Court sees no such abuse present in this case. For this reason, we affirm as to this issue.
3. WHETHER IT WAS ERROR FOR THE COURT TO PRECLUDE TESTIMONY FROM JAMES MCCREIGHT, JOHN REDHEAD, TIM REDHEAD, NORWOOD REDHEAD AND EARL ALFORD AS TO THE PLACE THE FIRE STARTED UNDER MRE 701.
¶ 19. In raising this issue, Redhead argues the testimony of these witnesses should have included their opinions as to the origin of the fire. Redhead argues their opinions fall under Mississippi Rule of Evidence 701 which allows for lay witnesses to offer opinion testimony rationally based on their perceptions. This testimony was excluded by the trial court under a motion in limine filed by Entergy prior to trial. Entergy answers Redhead's arguments by pointing out Redhead made no proffer of what these witnesses would have said. Entergy also argues these witnesses opinions do not properly fit under Mississippi Rule of Evidence 701.
¶ 20. After examination of the record, it appears no proffer was made in regards to what the lay opinion of these witnesses would be regarding the origin of the fire. "When a trial court prevents the introduction of certain evidence, it is incumbent on the offering party to make a proffer of the potential testimony of the witness or the point is waived for appellate review." Lloyd, 755 So.2d 12 (¶ 9) (Miss. Ct.App.1999). To preserve the excluded testimony for appeal, a proffer would have to have been made so this Court would know what testimony was excluded. Since this matter was not properly preserved for appeal, then this issue will be treated as waived. We affirm the trial court's holding on this issue.
¶ 21. In addition, these witnesses are not qualified to make statements of opinion as to the matter of the fire's origin. Under Mississippi Rule of Evidence 701, a lay witness's opinion testimony is limited "to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." MRE 701. None of these witnesses actually saw the fire start. All these witnesses saw were burnt trees. If the witnesses wanted to testify about their opinion as to how burnt the trees were, this would be allowable because that opinion would be based on something they actually saw. However, they cannot testify as to how or where the *809 fire was started because this is beyond the scope of their perceptions. The trial judge did not abuse his discretion by preventing this opinion evidence from getting into evidence, and we must not disturb his ruling.
4. WHETHER IT WAS ERROR UNDER MRE 803(8)(C) TO EXCLUDE THE AMITE COUNTY FORESTER'S REPORT REFLECTING THE CAUSE OF THE FIRE BEING THE "POWER LINES".
¶ 22. This issue revolves around a standardized report made by Earl Alford. A section on the report sets out a reason for the fires starting. According to Redhead, Alford stated on the line that the cause of the fire was the power line. This report was marked for identification, and Entergy objected to it being entered into evidence because the statement regarding the cause of the fire was given by someone not qualified as an expert. The trial court stated it would allow the report into evidence, but only after the line regarding the cause of the fire was deleted. Redhead did not enter the report into evidence.
¶ 23. Redhead argues the case of Beech Aircraft Corporation v. Rainey causes the trial judge's ruling to be in error. Beech Aircraft Corporation v. Rainey, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). This case dealt with an interpretation of Federal Rule of Evidence 803(8)(c). "We hold, therefore, that portions of investigatory reports otherwise admissible under Rule 803(8)(c) are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." Beech Aircraft Corp., 488 U.S. at 170, 109 S.Ct. 439. While this does not deal directly with Mississippi Rule of Evidence 803, Redhead argues it should be applied to the analysis here because Mississippi Rule of Evidence 803 is modeled after Federal Rule of Evidence 803.
¶ 24. This same argument was made before this Court in the case of Burnham v. Stevens, 734 So.2d 256 (Miss.Ct.App. 1999). In that case, the Court refused to resolve this issue because the letter, which was the subject of dispute, was not included in the record. In this case, the report was included in the record. However, this issue may be decided without addressing the Beech analysis. As stated above, using the Beech analysis, this statement could be allowed in if it is based on a factual investigation and is trustworthy. Mississippi Rule of Evidence 803(8)(c) states:
Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
MRE 803(8)(c). In both the Beech analysis and the rule set out by MRE 803(8)(c) for a statement to be admitted into evidence when it is included in an 803(8) report, the statement must be considered trustworthy. The trial judge ruled in this case that the report was admissible, but the statement regarding the cause of the fire was not because it was a conclusory opinion offered by a person not qualified to offer such an opinion. Thus, Alford's statement of opinion fails to meet the trustworthiness requirement of both MRE 803(8) and the second part of the Beech test. This was a statement given by a person not qualified to make such a statement, and could hardly be considered trustworthy. For this reason, the statement *810 fails to meet the trustworthiness requirements. Therefore the trial judge was not in error. This was basically an attempt by Redhead to get around the fact Alford's lay opinion had already been ruled inadmissible.
5. WHETHER IT WAS ERROR TO DENY PLAINTIFF'S COUNSEL THE RIGHT TO CONDUCT CROSS-EXAMINATION OF ENTERGY'S EMPLOYEE PHIL TIGRETT AFTER EXTENSIVE DIRECT EXAMINATION BY ENTERGY'S COUNSEL.
¶ 25. In this issue, Redhead complains he was denied the right to cross examine Phil Tigrett after Tigrett testified. Redhead called Tigrett as an adverse witness during his case in chief. After Redhead was finished with his cross examination, Entergy was then allowed to examine Tigrett. During this examination, Entergy questioned Tigrett in great detail about the safety devices Entergy used in its power lines. This was a topic Redhead questioned Tigrett about briefly during his cross examination. After Entergy had finished examining Tigrett, Redhead wanted to ask some questions on recross. The trial court would not allow Redhead to do this because the witness had testified all day long.
¶ 26. A trial judge has great discretion in making evidentiary rulings and in controlling the manner in which witnesses will be questioned. MRE 611. This rule allows a trial judge to "avoid needless consumption of time." MRE 611(a). In addition, this Court has held "[r]ecrossexamination may be limited by the trial judge in his sound discretion." Nolan v. Brantley, 767 So.2d 234(¶ 7) (Miss.Ct.App.2000). This Court believes this judge was trying to avoid needless consumption of time by further questioning of this witness, and therefore this was not an abuse of discretion. Because there was no abuse of discretion by the trial court limiting recross examination, this Court must affirm the holding of the trial court.
6. WHETHER IT WAS ERROR FOR THE COURT TO RULE AS NOT "RELEVANT" A QUESTION BY PLAINTIFF'S COUNSEL DIRECTED TO DUNCAN ON CROSS EXAMINATION REGARDING THE TRIMMING OF TREES ON ENTERGY'S LINES AFTER ENTERGY RECEIVED A COMPLAINT AS TO THE TREES EARLIER IN SEPTEMBER, 1997 BEFORE THE FIRE.
11. WHETHER THE TRIAL COURT COMMITTED ERROR IN FAILING TO GIVE INSTRUCTION "P-9".
¶ 27. These issues have been combined because they can be resolved together. The question issue six is based on was asked during the examination of Bob Duncan, a network manager for Entergy, who was called as an adverse witness. The subject of discussion prior to the question centered around a complaint Entergy received prior to the fire. Redhead was questioning Duncan as to how the complaint was handled by Entergy, and Redhead's attorney, Mr. Mulhearn made the statement, "[a]nd don't trim the lines if that's what it takes." This statement was objected to, as well as the entire line of questioning, on the basis of relevancy and because the question had already been answered. The trial judge sustained the objection and ruled the questions had been answered. Issue eleven dealt with a jury instruction the trial court refused to give. The jury instruction centered around § 218 of the National Electric Safety Code and Entergy's alleged violation of that section.
*811 ¶ 28. Redhead's arguments regarding the question and the jury instruction, however, are moot. In raising these issues, Redhead failed to cite any authority in support of his position. "The Mississippi Supreme Court has held that where a party fails to cite case law in support of his argument, we are not bound to address his assertions of error." Ratcliff v. State, 752 So.2d 435(¶ 7)(Miss.Ct.App. 1999) (citing Hewlett v. State, 607 So.2d 1097, 1107 (Miss.1992). Since Redhead has failed to cite any case authority supporting these issues, we are procedurally barred from addressing them.
7. WHETHER IT WAS ERROR TO EXCLUDE TESTIMONY REGARDING ENTERGY'S ACTS OF TRIMMING TREES ON THE REDHEAD PROPERTY AFTER THE FIRE AS A CLEAR EXCEPTION TO MRE 407.
¶ 29. This issue deals with the fact that in 1998, a year after the fire, Entergy trimmed its right of way around some of the power lines on Redhead's land. Entergy filed a motion in limine to prevent Redhead from offering these facts into evidence in order to prevent prejudice. The trial court granted this motion. Redhead then tried to offer evidence of this trimming to show Entergy had control over the right of way. Redhead claims Entergy denied it had permission to trim the lines, and that Entergy's control over the right of way was in issue.
¶ 30. Mississippi Rule of Evidence 407 states:
When after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as providing ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.
MRE 407.
¶ 31. Phillip Tigrett testified Entergy had considered moving the power line from Redhead's land because the previous owner had refused to allow the trees to be cut around the power line. Mr. Sherburne also testified he had a conversation with some men from Entergy or Mississippi Power and Light (he was not sure which, nor could he identify the men). Mr. Sherburne stated these men wanted him to give them a right of way, because the owners of Redhead's land would not let them cut the pine trees in the right of way. This is the only evidence indicating control over the right of way was ever at issue. However, during Bob Duncan's testimony, Duncan stated Entergy had complete control over the right of way.
¶ 32. Redhead argues the cutting is evidence of Entergy's control and therefore should be allowed in under the control/impeachment exception to Mississippi Rule of Evidence 407. The Mississippi Supreme Court has recognized that subsequent remedial measures may be admissible to prove control over something when control is a central issue of the case. Sumrall v. Mississippi Power Co., 693 So.2d 359, 366 (Miss.1997). However, while there may have been conflicting testimony, control over the right of way was never a central issue in this case. Though Entergy may have not claimed control of the easement in the past, as Tigrett and Sherburne testified, Entergy certainly claimed control of the easement during the trial. This is shown in Duncan's testimony. Since Entergy was claiming control of the easement now, it was not using lack of control of the easement as a defense against negligence.
*812 Thus, the evidence regarding the 1998 cutting could not be offered as evidence of control, because control was not at issue. The evidence of the cutting was simply evidence of a subsequent remedial measure. Mississippi Rule of Evidence 407 prevents evidence of subsequent remedial measures from being introduced. Therefore, the trial court was correct in not allowing testimony regarding the 1998 cutting into evidence. "The admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion." Sumrall, 693 So.2d at 365. There was no abuse of discretion here, and we affirm as to this issue.
8. WHETHER IT WAS ERROR FOR THE TRIAL COURT TO PROHIBIT WITHOUT ANY BASIS THE TESTIMONY OF PLAINTIFF'S EXPERT AS TO THE ULTIMATE ISSUE OF NEGLIGENCE ON THE PART OF ENTERGY.
¶ 33. In this issue, Redhead states it was error to prevent his expert, Mr. Nethken, from answering a question asked him in direct examination. Specifically, Mr. Nethken was asked "[D]o you have an opinion as to whether Entergy was negligent ...?" This question was objected to by Entergy and sustained by the trial court.
¶ 34. Redhead claims this ruling violates Mississippi Rule of Evidence 704 which states, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." MRE 704. While this may be so, the Mississippi Supreme Court has held that "[q]uestions which simply allow the witness to tell the jury what result to reach are impermissible as are questions asking the witness for a legal conclusion." Alexander v. State, 610 So.2d 320, 334 (Miss.1992). The question of whether or not Entergy was negligent is a question for the jury, and, by asking this question, Redhead was trying to get his witness to tell the jury how to find. This is not allowed, and the trial court was correct in sustaining the objection. Therefore, we affirm as to this issue.
9. WHETHER IT WAS ERROR FOR THE TRIAL COURT TO PREVENT PLAINTIFF FROM CALLING A DULY SUBPOENAED WITNESS WHO WAS A COMBINATION FACT WITNESS AND EXPERT FOR THE DEFENDANT ENTERGY.
¶ 35. Redhead raises this issue in response to not being allowed to call one of Entergy's experts as an adverse witness during his direct examination. Redhead subpoenaed one of Entergy's listed experts, William Tomlinson, and planned to call him as an adverse witness during Redhead's case in chief. The trial court refused to allow Redhead to call the expert and held the trial would proceed by letting each side put on its own witnesses. The trial judge stated he saw some gamesmanship at play here, thinking Redhead was trying to get two shots at the expert, once on direct and once on cross. Entergy never called Tomlinson as an expert.
¶ 36. Redhead claims the trial court was in error by refusing to allow Redhead to call Tomlinson because the witness had been to view the land and was a fact witness as well as expert witness. Redhead argues his right to subpoena a witness, albeit an expert listed by the defendant, was violated. Redhead states Tomlinson was competent to testify, he would have testified to things that were against Entergy's best interest, and his testimony would have been of great impeachment *813 use. Entergy claims the trial court was correct in using its powers to control the form in which testimony is given, and also that Redhead failed to properly preserve the matter for appeal by failing to offer the content of what Tomlinson would have testified. Entergy also argues Redhead's argument about Tomlinson being competent to testify about facts is a smokescreen because Redhead was not trying to elicit facts from Tomlinson, but was trying to use Tomlinson to testify as to his opinion.
¶ 37. The question of whether Redhead could subpoena Tomlinson is not truly a deciding factor in this case. Entergy is correct in pointing out Redhead failed to properly preserve this error because the content of Tomlinson's testimony was never proffered. As stated above, to preserve an evidentiary exclusion for appeal, a proffer must be made as to what the content of the evidence or testimony would be. Lloyd, 755 So.2d at (¶ 9). Redhead failed to make a proffer of the content of Tomlinson's testimony, and for this reason we must affirm the holding of the trial court.
JURY INSTRUCTION ISSUES
10. WHETHER THE TRIAL COURT COMMITTED ERROR IN TREATING THE CASE SOLELY AS A NEGLIGENCE CASE RATHER THAN A CASE PURSUANT TO § 95-5-10 OF THE MISSISSIPPI CODE ANNOTATED OF 1972, AS AMENDED, AND IN FAILING TO INSTRUCT THE JURY BASED UPON § 95-5-10, SUPRA.
¶ 38. This issue deals with the fact the trial judge refused to give a jury instruction regarding Miss.Code Ann. § 95-5-10 (Rev.1994) on the matter of damages to the trees. Redhead argues § 95-5-10 is the exclusive remedy in a case such as this, and it was error for the trial judge to treat this as a negligence case. Entergy argues the statute should not apply to this case because no trees were intentionally cut and because this statute has never been applied to cases dealing with trees damaged by fire. Entergy also claims since the jury found for it on the issue of liability, the issue of damages does not matter.
¶ 39. The Mississippi Supreme Court has held, and the statute itself states, that § 95-5-10 is the exclusive remedy when dealing with cases where trees have been cut. Fly Timber Co. v. Waldo, 758 So.2d 1067(¶ 12) (Miss.Ct.App.2000) (citing McCain v. Memphis Hardwood Flooring Co., 725 So.2d 788(¶9)(Miss.1998)). We must affirm as to this issue.
12. WHETHER THE TRIAL COURT COMMITTED ERROR IN FAILING TO GIVE INSTRUCTION "P-10" AS PRESENTED BY THE PLAINTIFF INSTRUCTING THE JURY THAT ENTERGY WAS GUILTY OF NEGLIGENCE PER SE.
¶ 40. This issue deals with jury instruction number 14, which was given to the jury in a modified state. Instead of stating "[t]hen you should find that Entergy was negligent per se," the instruction stated "[t]hen you may find that Entergy was negligent." Redhead claims the trial court was in error for failing to offer the instruction as he had presented it.
¶ 41. The Mississippi Supreme Court has held that a violation of the National Electric Safety Code constitutes negligence per se and a failure to grant an instruction stating such can be reversible error. Mississippi Power & Light Co. v. Lumpkin, 725 So.2d 721(¶ 32) (Miss.1998). However, Redhead must first offer evidence "sufficient for reasonable jurors to conclude" a violation of the NESC actually happened. Gifford v. Four-County Electric *814 Power Ass'n, 615 So.2d 1166, 1173 (Miss.1992). The rule cited in the instruction, § 218A, states that by trimming trees or using suitable materials or devices the electric company can meet the safety requirement of the code. There was a great deal of testimony offered into evidence regarding the safety devices used by Entergy. Because Entergy did use safety devices on its power line, the use of such devices meets the "devices" section of § 218A(2). We believe Redhead failed to offer evidence sufficient enough to conclusively prove Entergy was in violation of the National Electric Safety Code. Thus, the trial court was not in error for failing to give the instruction, and we must affirm as to this issue.
13. WHETHER THE COURT COMMITTED ERROR IN FAILING TO GRANT PLAINTIFF'S INSTRUCTION "P-12" BASED UPON THE DOCTRINE OF RES IPSA LOQUITUR.
¶ 42. Redhead argues the trial court was in error for failing to instruct the jury on the doctrine of res ipsa loquitur. Redhead claims the doctrine should apply because a fire occurred on a piece of property where a power line is located, and thus, the power line must have caused the fire. Entergy answers this argument by stating the facts of this case simply do not fulfill the required elements of res ipsa loquitur.
¶ 43. The doctrine of res ipsa loquitur must be applied cautiously, and it has three elements:
1. The instrumentality causing the damage must be under the exclusive control of the defendant.
2. The occurrence must be such as in the ordinary course of things would not happen if those in control of the instrumentality used proper care.
3. The occurrence must not be due to any voluntary act on the part of the plaintiff.
Read v. Southern Pine Electric Power Association, 515 So.2d 916, 919-20 (Miss. 1987). If there is enough evidence to make a jury question on each of these elements, a jury may infer negligence, and a plaintiff is entitled to an instruction to that effect. Id. at 920. With this in mind, we must now decide whether the trial court was in error by failing to give the instruction.
¶ 44. The problem in applying res ipsa loquitur to this case is Redhead fails to meet two of the elements of res ipsa loquitur. In regards to the first element, Redhead has not conclusively proven the power line was the source of the fire. In addition, Redhead failed to meet the second element. The "occurrence" in this case was a fire, and a fire could happen regardless of whether Entergy had used proper care. This is simply not an event which in the ordinary course of things would not happen. Pairing this reasoning with our standard of review in deciding whether the jury was fairly instructed as to the primary rules of law, the trial court was not in error. O'Flynn, 759 So.2d at (¶ 31). We affirm as to this issue.
14. WHETHER THE TRIAL COURT COMMITTED ERROR IN GIVING INSTRUCTION D-12 OVER PLAINTIFF'S OBJECTION.
¶ 45. This issue deals with a jury instruction which stated;
The Court instructs the jury that a plaintiff is not entitled to recover damages for such harm as he could have avoided by the use of due care and good judgment, or for harm or injury that resulted from his own lack of care or good judgment. It is your duty to consider *815 the reasonableness of the conduct of the plaintiff when determining whether the plaintiff exercised reasonable care and judgment.
Redhead claims this instruction wrongly called his reasonableness into question, confused the jurors, and that there was no evidentiary basis for the instruction. Entergy argues the instruction deals with the fact Redhead clear cut his land after the fire, thereby destroying evidence. Entergy argues this was unreasonable.
¶ 46. Considering the other instructions that were given, we do not find the trial court in error for giving this instruction. It simply states that if the plaintiff did anything to increase his damages, then his recovery should be limited. As stated above, this Court's job in reviewing the trial court's decisions to grant or deny a jury instruction is to decide if the aggregate of the instructions as a whole fairly express the rules of law. O'Flynn, 759 So.2d at (¶ 31). This was a proper statement of the law, and was not reversible error.
15. WHETHER THE TRIAL COURT'S ERRONEOUS MIND SET AS TO PLAINTIFF'S INSTRUCTIONS "P-16", "P-17", AND "P-18" WAS ERROR.
¶ 47. These three instructions all dealt with punitive damages. Redhead complains more about the trial court's mind set relating to punitive damages than to the court's actual ruling. In response, Entergy simply points out the correct statute, Miss.Code Ann. § 11-1-65(b)(Supp.2000). The Code states "[i]n any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages." Miss.Code Ann. § 11-1-65(b) (Supp.2000). As the jury had neither found Entergy liable, nor had they assessed damages, discussion of punitive damages was premature. Punitive damages cannot be assessed until compensatory damages have been given. Id. The trial court followed the law, and we therefore affirm as to this issue.
DISCOVERY VIOLATION ISSUE
16. WHETHER THE TRIAL COURT COMMITTED ERROR IN FAILING TO FIND ENTERGY HAD COMMITTED A DISCOVERY VIOLATION NECESSITATING REVERSAL.
¶ 48. When Redhead was examining Mr. Duncan, evidence which Redhead was not aware of came to light. During Duncan's testimony, he was asked about complaints concerning the power line, specifically those of a Mr. Caston. Duncan stated Mr. Caston had complained about the lights in his house going out. Redhead claims he did not know of this, and argues this information could have been useful if it had been revealed during discovery. Entergy counters by stating it gave all the reports it had on outages and the history of that power line in a report it gave in discovery. Entergy argues Redhead simply did not like the way it was presented.
¶ 49. The simple fact of the matter is Redhead knew prior to trial that a complaint had been made by Mr. Caston. The topic of the complaint came up during Redhead's questioning of Duncan. Redhead questioned Duncan about Mr. Caston's complaint because the complaint was mentioned in Duncan's pre-trial deposition. Duncan mentioned the customer complaint is a document separate from the outage report, and Redhead noted he did not receive this document. Knowing of the complaint, Redhead could have pursued this matter further through discovery, but instead made the decision not to delve into *816 it. Redhead cannot argue any sort of undue surprise occurred because of this. In addition, Redhead did not attempt to preserve this matter for appeal by filing an objection or making a request that the document be presented. Agnew v. State, 783 So.2d 699 (¶ 21) (Miss.2001). For this reason we affirm as to this issue.

CONCLUSION
¶ 50. The jury's verdict, that Entergy was not responsible for the fire on Redhead's property, was not against the overwhelming weight of the evidence. The various evidentiary matters which Redhead claims were in error were decisions well within the discretion of the trial court and are affirmed. The trial court also correctly instructed the jury as to the matters of law found in this case and is further affirmed. Lastly, Entergy was not guilty of any discovery violations as Redhead had knowledge of the matters before trial and chose not to pursue them. For these reasons, we hereby affirm the lower court.
¶ 51. THE JUDGMENT OF THE AMITE COUNTY CIRCUIT COURT IS HEREBY AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR.